UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

KEVIN W.,[1]

      **Plaintiff,**

  v.                          Civil Action 2:21-cv-1311
                                  Judge Edmund A. Sargus, Jr.
                                  Magistrate Judge Chelsey M. Vascura

**COMMISSIONER OF SOCIAL**
**SECURITY,**

      **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Kevin W., brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security denying his application for a period of disability and disability insurance benefits ("DIB"). This matter is before the undersigned for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 17), the Commissioner's Memorandum in Opposition (ECF No. 19), and the administrative record (ECF No. 12). For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

                **I.**        **BACKGROUND**

Plaintiff protectively filed a DIB application on November 27, 2018, alleging that he had been disabled since October 19, 2018. (R. 143–44.) On August 24, 2020, after Plaintiff's

---

[1] Pursuant to this Court's General Order 22–01, any opinion, order, judgment or other disposition in Social Security cases shall refer to plaintiffs by their first names and last initials.

application was denied both initially and on reconsideration, Administrative Law Judge Jeffrey Hartranft (the "ALJ") held a hearing at which Plaintiff, represented by counsel, appeared and testified, as did a vocational expert. (R. 34–56.) On August 31, 2020, the ALJ issued a decision denying benefits. (R. 12–28.) On January 21, 2021, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. 1–3.) Plaintiff then timely commenced the instant action. (ECF No. 1.)

In his Statement of Errors, Plaintiff sets forth three contentions of error: (1) the ALJ improperly failed to identify Plaintiff's learning disability as a medically determinable impairment; (2) the ALJ improperly failed to incorporate into Plaintiff's residual functional capacity ("RFC")[2] all of the concentration, persistence, and pace limitations found by state agency reviewers despite finding that their findings were persuasive; and (3) the ALJ improperly failed to include the use of a cane in Plaintiff's RFC. (Pl.'s Statement of Errors 4, 7, 10, ECF No. 17.)

## II. THE ALJ'S DECISION

The ALJ issued his decision on August 31, 2020, finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. 12–28.) First, the ALJ determined that Plaintiff meets the insured status requirements of the Social Security Act through December 31,

---

[2] A claimant's RFC is an assessment of "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1).

2

2023. (R. 17.) At step one of the sequential evaluation process,[3] the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 19, 2018, the alleged disability onset date. (*Id.*) At step two, the ALJ found that Plaintiff had the following severe impairments: "morbid obesity; chronic venous insufficiency; degenerative changes [of the] right knee; sequelae of remote left hand injury; [and] depressive and anxiety disorders." (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (R. 18–20.) The ALJ then set forth Plaintiff's residual functional capacity ("RFC")[4] as follows:

---

[3]The Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

    1. Is the claimant engaged in substantial gainful activity?

    2. Does the claimant suffer from one or more severe impairments?

    3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

    4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

    5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

[4]A claimant's RFC is an assessment of "the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1).

3

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except he could occasionally climb ramps or stairs but never climb ladders, ropes, or scaffolds. He would be capable of occasional balancing, stooping, kneeling, crouching, and crawling. He would need to avoid workplace hazards, such as unprotected heights and machinery. He would be capable of simple routine and repetitive tasks, involving only simple work-related decisions and with few, if any, workplace changes. He could perform frequent handling and fingering with [his] left hand.

(R. 21.) At step four, relying on testimony from the vocational expert, the ALJ found that Plaintiff was unable to perform his past relevant work. (R. 26–27.) At step five, the ALJ determined that jobs existed in significant numbers in the national economy that Plaintiff could perform. (R. 27–28.) The ALJ therefore found that Plaintiff was not disabled under the Act.

### III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is

4

substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## IV. ANALYSIS

As set forth above, Plaintiff asserts three contentions of error: (1) the ALJ improperly failed to find that Plaintiff's learning disability was a medically determinable impairment; (2) the ALJ improperly failed to account for Plaintiff's limitations in concentration, persistence, and pace when crafting the RFC; and (3) the ALJ improperly failed to include the use of a cane in the RFC. (Pl.'s Statement of Errors 4, 7, 10, ECF No. 17.) The undersigned considers each contention of error in turn.

### A. The ALJ's Consideration of Plaintiff's Learning Disability

Plaintiff first contends that the ALJ erred at step two of the sequential evaluation because he failed to find that Plaintiff's learning disability was a medically determinable impairment. Plaintiff asserts that because of this error, "the ALJ gave no consideration" to his learning disability, or its "potential impact" when assessing his RFC. (Pl.'s Statement of Errors 4, ECF No. 17.) The Commissioner urges that the ALJ did not err because Plaintiff does not point to evidence demonstrating that his learning disability was a medically determinable impairment, and that even if he did, any error is harmless. The Commissioner is correct.

At step two, an ALJ must consider whether Plaintiff's alleged impairments constitute "medically determinable" impairments, *i.e.*, impairments that results from anatomical, physiological or psychological abnormalities that can be shown by medically acceptable clinical

5

and laboratory diagnostic techniques. 20 C.F.R. § 404.1521. In order to be classified as "medically determinable," impairments must also meet the durational requirement, meaning that they, "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509. "If an alleged impairment is not medically determinable, an ALJ need not consider that impairment in assessing the RFC." *Jones v. Comm'r of Soc. Sec.*, No. 3:15-cv-00428, 2017 WL 540923, at *6 (S.D. Ohio Feb. 10, 2017).

If an impairment is medically determinable, then an ALJ must determine whether it is severe. § 404.1521. A "severe impairment" is defined as "any impairment or combination of impairments which significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If a claimant has at least one severe medically determinable impairment, an ALJ must consider the limiting effects of all a claimant's medically determinable impairments, severe and not, when assessing a claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1523.

Plaintiff bears the burden of proving the existence of a severe, medically determinable impairment that meets the twelve-month durational requirement. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Harley v. Comm'r of Soc. Sec.*, 485 F. App'x 802, 803 (6th Cir. 2012). The United States Court of Appeals for the Sixth Circuit has construed a claimant's burden at step two as "a *de minimis* hurdle in the disability determination process." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). The inquiry is therefore "employed as an administrative convenience to screen out claims that are 'totally groundless' solely from a medical standpoint." *Id*. at 863 (quoting *Farris v. Sec'y of Health & Hum. Servs.*, 773 F.2d 85, 90 n.1 (6th Cir. 1985)). Notably though, where the ALJ determines that a claimant has at least one severe impairment at step two, "the question of whether the ALJ characterized any other

6

alleged impairment as severe or not severe is of little consequence." *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003). Instead, the pertinent inquiry is whether the ALJ considered the "limiting effects of all [of the claimant's] impairment(s), even those that are not severe, in determining [the claimant's] residual functional capacity." 20 C.F.R. § 404.1545(e); *Pompa*, 73 F. App'x at 803 (rejecting plaintiff's argument that the ALJ erred by finding that some of her impairments were not severe, where the ALJ determined that plaintiff had at least one severe impairment and considered all plaintiff's impairments in the RFC assessment); *Maziarz v. Sec'y of Health & Hum. Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) (same).

Here, the ALJ determined that Plaintiff had the following medically determinable impairments that were severe: morbid obesity; chronic venous insufficiency; degenerative changes right knee; sequelae of remote left-hand injury; and depressive and anxiety disorders. (R. 17.) The ALJ did not, however, find that Plaintiff's learning disability constituted a medically determinable impairment.

The undersigned finds that this did not constitute reversible error because Plaintiff cannot establish that his learning disability constitutes a medically determinable impairment. Again, to meet that burden, Plaintiff must show that his learning disability "result[ed] from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." § 404.1521. To make that showing, Plaintiff must use objective medical evidence from an acceptable source; his own "statement of symptoms, a diagnosis, or a medical opinion" cannot establish "the existence of an impairment[]." *Id.* But Plaintiff does not identify any such objective evidence.

Instead, in support of his contention that his learning disability constitutes a medically determinable impairment, Plaintiff cites to four items in the record. First is a staff note from a

7

May 2019 mental health assessment reflecting Plaintiff's self-report that he had been in special education classes in school. (R. 257.) Second is a clinic note from an April 2019 internal medicine appointment at which Plaintiff was diagnosed with illiteracy. (R. 264.) Third is a clinic note from that same visit, also indicating an illiteracy diagnosis. (R. 272.) Fourth is the report of the consultative psychological examiner in this case, in which the examiner summarizes Plaintiff's self-reports that he was in special education during school, that he graduated high school, and that he "still can't read or write much or spell." (R. 300–305.) None of these records contain the evidentiary support required by 20 C.F.R. § 404.1521. Therefore, the ALJ did not err by failing to find that Plaintiff's learning disability constituted a medically determinable impairment at step two.

Even if the ALJ should have determined that Plaintiff's learning disability constituted a medically determinable impairment, the failure to do so was harmless because the ALJ considered the alleged impairment when assessing his RFC. Specifically, when assessing Plaintiff's RFC, the ALJ wrote that Plaintiff "reported a history of special education and difficulty reading and writing," thereby demonstrating that the alleged impairment was considered. (R. 23.) In addition, during the RFC assessment, the ALJ noted that the consultative psychological examiner opined that Plaintiff "exhibited intellect within the borderline range" and that he was not significantly limited in his mental functioning. (R. 24–25.) The ALJ further noted in the RFC assessment that the state agency reviewing psychologists had access to IQ test results from when Plaintiff was a teenager that were not consistent with "total disability" but were instead "generally consistent" with the consultative examiner's finding that Plaintiff's intellect

8

was in the borderline range. (R. 26.)[5] Accordingly, the undersigned finds that the ALJ considered Plaintiff's alleged learning disability and cognitive impairments when assessing his RFC. Moreover, the ALJ limited Plaintiff to "simple routine and repetitive tasks, involving only simple work-related decisions and with few, if any, workplace changes." (R. 21.) Therefore, the ALJ not only considered the impact that Plaintiff's alleged learning disability had on his ability to work, the ALJ accommodated those limitations such that any failure to designate this impairment as medically determinable at step two was harmless.

Plaintiff asserts that the failure to correctly characterize an impairment as determinable should be subject to a different standard of review than the failure to classify an error as severe. (Pl.'s Statement of Errors 6, ECF No. 17.) ("This error is different than the ALJ merely mischaracterizing a severe impairment, as a non-severe impairment, because, in such a situation, the non-severe impairment would still receive consideration throughout the evaluation process.") But when an ALJ considers evidence about an impairment when assessing an RFC, as is the case here, the harmless-error analysis should be the same whether alleged error is the failure to find the impairment determinable or severe. *See Fresquez v. Comm'r of Soc. Sec.*, No. 1:18-cv-114, 2019 WL 1440344, at *1 (S.D. Ohio Mar. 31, 2019) (finding that same harmless error analysis applied whether ALJ failed at step two to find an impairment determinable or failed to find an impairment severe if the ALJ nonetheless considered the impairment when assessing a claimant's RFC); *Hatton v. Comm'r of Soc. Sec.*, No. 16-14463, 2018 WL 1278916, at * 6 (E.D.

---

[5] In addition to his RFC-related discussion of Plaintiff's cognitive limitations, the ALJ discussed evidence of Plaintiff's cognitive limitations in his in his step-five discussion of Plaintiff's vocational profile. (R. 27.) There, the ALJ determined that Plaintiff had graduated high school despite his history of special education, and that Plaintiff was not illiterate as that term is defined in the Social Security Regulations. (*Id*.) In support of this finding, the ALJ noted that although Plaintiff had some difficulty with reading and writing, he testified at his hearing that he was able to read and understand English. (*Id*; *see also* R. 43.)

Mich. Feb. 14, 2018) (finding that ALJ's determination that two impairments were not medically determinable was harmless error regardless of whether they met the *de minimus* standard for severity when the "ALJ deemed other impairments severe, proceeded through the sequential disability analysis, and nevertheless considered symptoms associated with these conditions in fashioning the RFC"), *report and recommendation adopted sub nom*, *Hatton v. Berryhill*, 2018 WL 1466087 (E.D. Mich. Mar. 26, 2018);

Because the ALJ did not err by failing to find that Plaintiff's learning disability was a medically determinable impairment, and any such error would be harmless, the undersigned **RECOMMENDS** that Plaintiff's first contention of error be **OVERRULED**.

**B.     The ALJ's RFC Limitations as to Concentration, Persistence, and Pace**

Plaintiff next contends that the RFC "is not supported by the substantial evidence of the record, because it does not adequately account for [Plaintiff's] limitations in concentration, persistence, or pace . . . ." (Pl.'s Statement of Errors 8, ECF No. 17.) Specifically, Plaintiff appears to allege that the ALJ erred by failing to incorporate or explain why he did not incorporate into Plaintiff's RFC all the concentration persistence and pace limitations found by the state agency psychological reviewers even though the ALJ determined that their findings were persuasive. (*Id.*, at 8–9.) The undersigned disagrees.

As previously noted, a claimant's RFC is an assessment of the most he can do despite his limitations. § 404.1545(a)(1). A claimant's RFC assessment must be based on all the relevant evidence in his or her case file. 20 C.F.R. § 404.1545(a)(1); SSR 96–8P, 1996 WL 378184, at *7 (July 2, 1996). The governing regulations[6] describe five different categories of evidence:

---

[6]Plaintiff's application was filed after March 27, 2017. Therefore, it is governed by revised regulations redefining how evidence is categorized and evaluated when the RFC is assessed. *See* 20 C.F.R. §§ 404.1513(a), 404.1520c (2017).

10

(1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. § 404.1513(a)(1)–(5). When evaluating the evidence, an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, an ALJ must use the following factors when considering prior administrative medical findings or medical opinions: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the Social Security Administration's] disability program's policies and evidentiary requirements." §§ 404.1520c(c)(1)–(5). Although there are five factors, supportability and consistency are the most important, and the ALJ must explain how they were considered. § 404.1520c(b)(2). And although an ALJ may discuss how he or she evaluated the other factors, he or she is not generally required to do so. *Id*. If, however, an ALJ "find[s] that two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ must] articulate how [he or she] considered the other most persuasive factors . . . . . ." § 404.1520c(b)(3).

      Here, the state agency reviewers found that Plaintiff was limited to simple, routine, one-to-three step tasks; he needed assistance with new tasks or changes and extra instruction; and he could adjust to infrequent changes with advance notice. (R. 68–69, 88–89). The ALJ assessed the state agency reviewers' findings as follows:

> The undersigned finds the psychological consultants' mental assessments persuasive to the extent these support limitation in the areas of understanding, remembering, and carrying out tasks, and adaption but the undersigned does not adopt the specific limitations, e.g., assistance if tasks change and extra instruction,

11

>advanced notice of changes, and one to three step tasks. These overstate the claimant's limitations given the claimant's mental status examinations, prior work history, and activities of daily living. It is noted that the consultants had access to remote IQ testing (WISC-R) when the claimant was 16 years old, which note verbal IQ of 78, PIQ of 101, and FSIQ of 87, with strength in nonverbal skills and weakness in verbal skills. However, these are not consistent with total disability and are generally consistent with the observations of Dr. Miller, who estimated borderline intellectual functioning. Overall, the consultants' assessments are more restrictive than what is necessary to address the claimant's mental impairments. Rather, the above residual functional capacity adequately accommodates the claimant's mental impairments (Exhibits 1A, 3A)

(R. 26.) As this discussion demonstrates, the ALJ found the reviewers' findings persuasive, but he did not incorporate into Plaintiff's RFC the specific limitations that they found. Plaintiff challenges that failure to incorporate. But as this discussion also demonstrates, the ALJ declined to incorporate those specific limitations for several reasons.

For example, the ALJ declined to incorporate those specific limitations because they overstated Plaintiff's limits given his mental status examinations. (R. 26.) Substantial evidence supports that explanation. The record contains mental status evaluations finding that Plaintiff's mood, affect, behavior, judgment, and thought content were often normal (R. 232, 234, 240, 247) or that his mood and affect were appropriate (R. 353, 351, 242, 244, 217, 284, 347, 330, 339, 421). The consultative examiner noted that Plaintiff's attention span and concentration were in the normal range and that his concentration was fair to normal. (R. 301, 303.) At another examination, Plaitiff's comprehension was intact. (R. 225.) Although Plaintiff reported depression and anxiety, providers regularly noted that these were due to or triggered by situational stressors, including Plaintiff's financial worries and concerns about his and his mother's physical health. (*See e.g.*, R. 432, 436, 439, 448, 452, 454, 456, 458, 460.) Plaintiff also reported that although his depression could be 8/10 a couple days a week, it was usually more

12

like 4/10. (R. 442.) Plaintiff indicated that his depression was manageable (R. 450), and he sometimes denied experiencing depression or anxiety (R. 395, 281, 339, 391, 399, 395).

The ALJ also declined to incorporate those specific limitations because they overstated Plaintiff's limits given his work history. (R. 26.) Substantial evidence supports that explanation. The record contains evidence that Plaintiff graduated from high school and that his past work included working for a company for 20 years installing duct work and furnaces in new homes. (R. 40–41.)

Second, the ALJ declined to incorporate those specific limitations because the reviewers had access to remote IQ tests. (R. 26.) Those tests were not, however, consistent with total disability but were instead more generally consistent with the consultative examiner's finding that Plaintiff's intellect functioned in the borderline range. (*Id*.) Substantial evidence supports that determination. The consultative examiner indeed wrote that Plaintiff's intellect functioned in the borderline range. (R. 303.) The consultative examiner further found that Plaintiff's abilities to understand remember and carry out instructions and to interact with others were adequate and that there appeared to be "no problem" with his attention and concentration abilities. (R. 303, 304.)

In sum, the ALJ provided record-based reasons for declining to adopt the reviewers' specific limitations into Plaintiff's RFC. In any event, the ALJ nevertheless incorporated other limitations. Specifically, the ALJ limited Plaintiff to "simple routine and repetitive tasks, involving only simple work-related decisions and with few, if any, workplace changes." (R. 21). Courts have found that similar RFC limitations are sufficient to accommodate even a moderate limitation in concentration, persistence, and pace. *See, e.g., Jackson v. Comm'r of Soc. Sec.,* No. 1:10-cv-763, 2011 WL 4943966, at *3–4 (N.D. Ohio Oct. 18, 2011) (RFC and corresponding

13

hypothetical posed to vocational expert limiting plaintiff to "simple, repetitive tasks" adequately accounted for plaintiff's moderate limitation in concentration, persistence, and pace); *Smith-Johnson v. Comm'r of Soc. Sec.,* 579 F. App'x 426, 436–37 (6th Cir. 2014) (RFC and corresponding hypothetical posed to vocational expert limiting plaintiff to "simple, routine, and repetitive tasks adequately convey[ed]" moderate limitation in concentration, persistence, and pace, even where ALJ did not use "the exact language of [opining] professionals"). Thus, even if the record evidence had supported a greater limitation in the area of concentration, persistence, and pace, the RFC the ALJ assessed would adequately accommodate such limitation.

Plaintiff's related, cursory argument that the "RFC fails to convey his limitations accurately and fully, in concentration, persistence and pace to the vocational expert" is unavailing. (*Id.* at 9–10.) For the same reasons that the RFC findings are not in error, the undersigned finds no error with the corresponding hypothetical questions posed to the vocational expert.

Because substantial evidence supports the RFC as it relates to Plaintiff's limitations in concentration, persistence, and pace, the undersigned **RECOMMENDS** that Plaintiff's second contention of error be **OVERRULED**.

C.     The ALJ's Consideration of Plaintiff's Need for a Cane

Last, Plaintiff contends that the "ALJ erroneously determined that [Plaintiff's] cane should not be considered in his residual functional capacity determination." (Pl.'s Statement of Errors 10, ECF No. 17.) The undersigned disagrees.

If a hand-held assistive device is not a medically necessary or required, it cannot be considered a restriction or a limitation on a claimant's ability to work. *See Carreon v. Massanari,* 51 F. App'x 571, 575 (6th Cir. 2002) (explaining standard to determine whether a cane was a necessary device (*i.e.*, medically necessary)). Social Security Ruling 96-9p applies when a

claimant is limited to a less than full range of sedentary work, as is the case here. SSR 96-9P, 1996 WL 374185, (July 2, 1996). It instructs as follows:

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).

*Id*. at *7.

Here, the ALJ provided the following detailed discussion supporting his decision to omit the use of a cane from Plaintiff's RFC:

> It is noted that in June 2019, one of the claimant's treatment providers wrote a prescription for a cane due to edema and cellulitis (Exhibit 5F). However, the evidence does not support the medical need for an ambulatory aid or device. The claimant's edema was well controlled with compression and cellulitis had resolved without active infection or ulcerations noted. Moreover, at that time, the claimant reported only an occasional, subjective feeling that the leg would give out, which is not consistent with the use of a cane on a regular basis. There is no evidence of instability or falls in the record (Exhibit 11F). The claimant used a cane and had slow gait during the July 2019 psychological exam but did not require the use of a cane in February 2019 at the consultative physical exam (Exhibits 2F, 7F). Other sources did not observe the use of a cane on a consistent basis (*see* Exhibits 5F, 10F, 11F, 15F). Accordingly, the undersigned does not adopt the use of a cane.

(R. 25.)

Substantial evidence supports the ALJ's determination that a cane is not medically required. The ALJ acknowledged that Plaintiff was prescribed a cane in 2019 (R. 286, noting cane prescription), but reasonably found that the weight of the evidence did not support that a cane was medically necessary. As the ALJ discussed, medical records show that Plaintiff's leg edema was well controlled with compression, and his cellulitis had resolved without active infection or ulcerations noted. (R. 25.) And indeed, on May 20, 2019, a provider noted that Plaintiff's cellulitis was resolved (R. 285); Plaintiff had no evidence of cellulitis or venous ulcers (R. 283); Plaintiff had no tenderness or swelling; his skin was warm, dry, and pink; and he had

15

normal range of motion and gait (R. 284). Examinations after that found that Plaintiff's left lower extremity had only trace edema (R. 347, 330), and his right lower extremity had sores that had mostly healed (R. 347, 330); or that he had no evidence of extremity cyanosis or clubbing and only trace edema bilaterally (R. 388, 392, 396). Plaintiff was also counseled on conservative care even after a cane was prescribed, and he was advised to engage in daily ambulation. (R. 348, 330.) Notably, no provider or reviewer opined or found that Plaintiff's limitations included use of a cane.

Moreover, even if the evidence established the need for a cane, the record contains no evidence describing the circumstances under which a cane would be necessary, as the Social Security Regulations require—no documents in the record indicate if Plaintiff was advised to use the cane at all times, intermittently, or otherwise. *See* SSR 96-9P, 1996 WL 374185, at *7; *Salem v. Colvin*, Case No. 14-CV-11616, 2015 WL 12732456, at *4 (E.D. Mich. Aug. 3, 2015) (finding the ALJ did not err in not including a limitation for a cane, when it had been prescribed, but the prescription did not "indicate the circumstances in which [the claimant] might require the use of a cane"); *Marko v. Comm'r of Soc. Sec.*, No. 2:16-CV-12204, 2017 WL 3116246, at *5 (E.D. Mich. July 21, 2017) (finding substantial evidence supported ALJ's determination that cane was not medically necessary where "nothing in [the prescriber's] mere prescription for a cane provide[d] evidence to indicate the frequency with which the cane should be used, its purpose, or its limit upon [the plaintiff's] ability to perfom light work"); *Golden v. Berryhill*, No. 1:18-cv-636, 2018 WL 7079506 at *19 (N.D. Ohio Dec. 12, 2018) ("Moreover, as Dr. Balaji's confirmation of a cane prescription does not indicate 'the circumstances for which [the cane] is needed,' it does not fulfill the requirements under SSR 96-9p."), *report and recommendation adopted*, 2019 WL 415250 (N.D. Ohio Feb. 1, 2019); *Sonya H. v. Comm'r of Soc. Sec.*, No.

1:20-CV-625, 2022 WL 952196, at *4 (S.D. Ohio Mar. 30, 2022) (finding ALJ's determination substantially supported, in part, because "prescription state[d] *in toto*: 'Quad walking cane chronic bilateral thoracic back pain . . . fibromyalgia . . . indications; fibromyalgia, chronic bilateral thoracic back pain' and Plaintiff pointed to no medical documentation describing the circumstances for which a cane is needed, such as all the time, for certain distances, or for certain terrains, as SSR 96-9P requires"). For these reasons, the undersigned finds no error with the ALJ's conclusion that a cane was not medically necessary.

Because substantial evidence supports the ALJ's RFC as it relates to Plaintiff's use of a cane, the undersigned **RECOMMENDS** that Plaintiff's third contention of error be **OVERRULED**.

## V. DISPOSITION

In sum, from a review of the record as a whole, the undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. For the foregoing reasons, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report and Recommendation, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the Report and Recommendation or specified proposed findings or recommendations to which objection is made. Upon proper objections, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or

recommendations made herein, may receive further evidence, or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review it *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE